UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Case #:  1:25-mj-07064-EAP |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| MAREK CHERKAOUI, | : | |
| | : | |
| Defendant. | : | |

---

**MEMORANDUM IN SUPPORT OF DEFENDANT CHERKAOUI
MOTION FOR RELEASE ON CONDITIONS PURSUANT TO *18 U.S.C. § 3142 (c)***

---

Terrell A. Ratliff, Esquire
811 Church Rd., Ste 105
Cinnaminson, New Jersey 08077
Phone: (856) 209-3111
Email: Terrell@RatliffJackson.com
Attorney for Defendant, Marek Cherkaoui

## I.    **INTRODUCTION**

Presently before the Court is a motion in which the defendant seeks an order granting him release on bail pending the trial of this case. Because there are conditions which will reasonably assure Mr. Cherkaoui appearance at trial and the safety of the community if he is released, the motion should be granted. Under the Bail Reform Act of 1984, 18 U.S.C. § 3141 et seq., a court generally "must release a defendant on bail on the least restrictive condition or combination of conditions that will reasonably assure the defendant's appearance when required and the safety of the community." *United States v. Madoff*, 586 F. Supp. 2d 240, 246 (S.D.N.Y. 2009); 18 U.S.C. § 3142(c)(1)(B). It is properly viewed as a permissible regulatory, or preventative, measure for use by the courts, rather than being punitive in nature. See *United States v. Salerno*, 481 U.S. 739, 747, 107 S.Ct. 2095, 2101 (1987). Significantly, in enacting the Bail Reform Act, Congress recognized "the traditional presumption favoring pretrial release 'for the majority of Federal defendants.'" *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986) cert. dismissed 479 U.S. 978, 107 S.Ct. 562 (1986). Accordingly, the Supreme Court has observed that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Salerno*, 481 U.S. at 755, 107 S.Ct. at 2105. "Because the law thus generally favors bail release, the government carries a dual burden in seeking pre- detention. First, it must establish by a preponderance of the evidence that the defendant, if released, presents an actual risk of flight. Assuming it satisfies this burden, the government must then demonstrate by a preponderance of the evidence that no condition or combination of conditions could be imposed on the defendant that would reasonably assure his presence in court." *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007) (internal citations omitted). The government carries an even higher burden if it

2

seeks to prove that the defendant is dangerous, in which case its burden is proof by clear and convincing evidence. *United States v. Perry,* 788 F.2d 100, 114–15 (3d Cir. 1986),

## II. <u>PRELIMINARY STATEMENT</u>

After what appears to have been a multi-month federal investigation into alleged online activity, federal agents ultimately arrested Marek Cherkaoui and charged him by criminal complaint. According to the government, investigators concluded that Mr. Cherkaoui used electronic devices and internet-based platforms in a manner they believe violated federal law. The government has characterized the evidence as strong and has framed the allegations in serious terms. At this stage of the proceedings, however, the government's case consists largely of investigative summaries and agent proffers that have not yet been tested through the adversarial process.

This is not unusual at the complaint stage. Criminal complaints often summarize investigative conclusions rather than present the underlying evidence itself. As a result, the defense has not yet received the full body of discovery necessary to evaluate the government's claims in a meaningful way. The complaint reflects the government's interpretation of certain electronic communications and digital activity, but the underlying materials—device forensic reports, metadata, account-access records, and the broader context surrounding the alleged communications—have not yet been produced to the defense or examined through cross-examination or adversarial litigation.

Cases involving alleged online conduct often turn on technical questions surrounding device access, attribution, and context. Determining who accessed a device, how an account was used, and whether particular communications occurred in the context suggested by investigators

3

frequently requires careful review of forensic data and digital records. At this early stage, however, those materials remain largely within the government's possession, and the defense has not yet had an opportunity to test the government's interpretation of that data.

Here, the alleged conduct involves computer and internet activity. The Bail Reform Act expressly authorizes the Court to impose the least restrictive combination of conditions necessary to reasonably assure both appearance and community safety. 18 U.S.C. § 3142(c)(1)(B). The statute permits the Court to impose restrictions on a defendant's activities, associations, residence, travel, and "any other condition that is reasonably necessary" to address identified risks. Id. Accordingly, the Court has broad authority to tailor release conditions—including restrictions on computer or internet access—where such limitations reasonably mitigate the concerns raised by the government. Despite the government's characterization of the investigation, Mr. Cherkaoui vigorously maintains his innocence and intends to contest the allegations in this case. At the same time, he recognizes the seriousness of the charges and understands the importance of strict compliance with any conditions imposed by the Court.

Mr. Cherkaoui also has meaningful ties to the community and the support of family members who are prepared to assist him in complying with the Court's directives. Those conditions could include home detention with electronic monitoring, supervision by Pretrial Services, restrictions on computer or internet use, surrender of travel documents, and third-party custodianship. Courts routinely rely on such conditions in cases involving alleged online activity, and those measures directly address the concerns identified by the government.

Mr. Cherkaoui therefore respectfully requests that the Court set reasonable bail. While the government has argued that detention is warranted, the Bail Reform Act requires the Court to

4

determine whether conditions exist that will reasonably assure both appearance and community safety. Here, those conditions plainly exist. Mr. Cherkaoui is prepared to submit to strict supervision, including electronic monitoring, limitations on computer or internet access, and any additional safeguards the Court deems appropriate. He is also willing to surrender any travel documents and agree not to apply for new ones while this matter is pending.

For these reasons, and for the reasons discussed more fully below, Mr. Cherkaoui respectfully requests that the Court grant his motion for release on conditions pending trial.

### III. ARGUMENT

Mr. Cherkaoui has remained in custody since his arrest, and only limited discovery has been provided by the Government at this early stage of the case. Importantly, this matter does not involve a statutory presumption of detention under the Bail Reform Act. The offense charged is not among the offenses that trigger a rebuttable presumption of detention under *18 U.S.C. § 3142(e)(3)*. Accordingly, the Government bears the burden of demonstrating that detention is warranted.

Under the Bail Reform Act, a defendant must be released pending trial unless the Government demonstrates that no condition or combination of conditions will reasonably assure the defendant's appearance and the safety of the community. *18 U.S.C. § 3142(c)*. If the Government seeks detention based on danger to the community, it must establish by clear and convincing evidence that no release conditions can reasonably assure community safety. 18 U.S.C. § 3142(f); see also *United States v. Salerno*, 481 U.S. 739, 750 (1987). If detention is sought based on risk of flight, the Government must demonstrate that risk by a preponderance of the evidence.

5

*United States v. Himler*, 797 F.2d 156, 160–61 (3d Cir. 1986). As discussed below, the statutory factors set forth in *18 U.S.C. § 3142(g)*, together with the conditions available to the Court, demonstrate that Mr. Cherkaoui can be safely released pending trial.

With respect to the first factor, Mr. Cherkaoui is charged with cyberstalking in violation of *18 U.S.C. § 2261A(2)(B)*. The Government's theory, as reflected in the complaint, appears to rely in part on assertions that Mr. Cherkaoui was associated with an online group or "gang" that allegedly engaged in coordinated harassment. At this stage, however, the complaint provides little factual support establishing that such a group actually existed or that Mr. Cherkaoui was a member of any organized entity. Rather, the allegations appear to consist primarily of interpretations of online communications and social media activity. The existence of an organized "gang" structure—and Mr. Cherkaoui's alleged role within it—remains an untested investigative conclusion that has not yet been examined through discovery or adversarial proceedings.

This distinction matters because the Government's characterization of the alleged conduct appears to rely heavily on the premise that Mr. Cherkaoui was acting as part of a coordinated group. If that premise is unsupported or overstated, the nature of the alleged conduct becomes materially different from the narrative suggested in the complaint. At this stage, however, the underlying communications and digital evidence have not yet been subjected to scrutiny through cross-examination or forensic review. The defense therefore has not yet had a meaningful opportunity to evaluate the Government's interpretation of that material.

Importantly, the offense charged does not involve allegations of physical violence. The conduct described in the complaint instead concerns alleged online communications and internet-based activity. While the Government characterizes the alleged conduct as serious, it remains the

type of activity that can be addressed through carefully tailored release conditions designed to restrict computer or internet use if necessary.

The second factor the Court must consider is the weight of the evidence against the defendant. *18 U.S.C. § 3142(g)(2)*. Here, the Complaint provides only a limited account of the Government's theory and largely reflects the Government's interpretation of certain online communications and electronic activity. At this early stage of the case, the underlying digital evidence—including the full context of communications, device forensic reports, and other technical data—has not yet been produced in discovery or tested through adversarial proceedings. As a result, the defense has not yet had a meaningful opportunity to evaluate the Government's interpretation of that material or assess the strength of the evidence it intends to rely upon at trial.

The Government's allegations also appear to rely in part on the characterization that Mr. Cherkaoui was associated with an online "gang" or coordinated group engaged in harassment. However, the Complaint provides little factual detail establishing the existence of such an organization or Mr. Cherkaoui's alleged role within it. At present, the Government's description appears to consist largely of investigative conclusions drawn from online communications rather than evidence demonstrating the structure, membership, or coordinated activity typically associated with an organized group.

Importantly, courts have cautioned that the weight-of-the-evidence factor should not be treated as a pretrial determination of guilt. See *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986). The Bail Reform Act requires the Court to consider this factor, but the allegations set forth in a complaint remain untested and should not be treated as definitive proof of the Government's case. At this stage, the defense has not yet been provided with the full evidentiary record necessary

7

to meaningfully assess or challenge the Government's claims.

Accordingly, while the Government has characterized its evidence as strong, the Complaint itself provides limited factual detail regarding the specific evidence the Government intends to rely upon at trial. Until discovery is produced and the underlying digital evidence can be reviewed in its full context, the defense is not in a position to evaluate the strength of the Government's case or the accuracy of its interpretation of the communications at issue.

The third statutory factor—the history and characteristics of the defendant—compels release. 18 U.S.C. § 3142(g)(3). The record here is not merely adequate; it is exceptional. Mr. Cherkaoui stands before this Court with no criminal history whatsoever. He has never been arrested, charged, convicted, or incarcerated at the federal, state, or local level. He has never failed to appear for any court proceeding. He has never violated probation, parole, or any court-imposed condition—because none have ever been imposed. This is not a defendant whose past conduct raises questions. It is a defendant whose past conduct answers them.

The Bail Reform Act specifically directs the Court to consider a defendant's "character," "past conduct," "criminal history," and "record concerning appearance at court proceedings." *18 U.S.C. § 3142(g)(3)(A)–(B)*. Each of these subfactors points in a single direction. Courts have consistently recognized that the absence of any prior criminal record is a substantial factor favoring pretrial release. *See United States v. Sabhnani,* 493 F.3d 63, 75 (2d Cir. 2007) ("the law thus generally favors bail release"); *United States v. Motamedi,* 767 F.2d 1403, 1405 (9th Cir. 1985) ("only in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in the defendant's favor"). A defendant with no history of violence, no history of flight, and no history of recidivism presents a fundamentally different risk calculus than the

paradigmatic detention case.

Equally significant, Mr. Cherkaoui is not without roots. He has substantial, verifiable ties to this community. His family members are prepared to serve as active third-party custodians, accepting legal responsibility for ensuring his compliance with every condition this Court imposes. The existence of custodians willing to accept that burden is itself a recognized basis for release where flight risk might otherwise be a concern. *See 18 U.S.C. § 3142(c)(1)(B)(i)* (authorizing release to third-party custodian as condition); *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985) (en banc) (conditions of release should be crafted to reasonably assure appearance and safety).

The government bears the burden of demonstrating by a preponderance of the evidence that no condition or combination of conditions will reasonably assure Mr. Cherkaoui's appearance. *See United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986). On this factor, it cannot meet that burden. A defendant with a spotless record, deep community ties, and a family support structure willing to accept custodial responsibility is precisely the defendant the Bail Reform Act contemplates for conditional release. Accordingly, the third factor weighs unambiguously in favor of Mr. Cherkaoui's release.

The fourth and final factor requires the Court to assess "the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release." 18 U.S.C. § 3142(g)(4). That assessment must be grounded in evidence, not conjecture. *See United States v. Salerno*, 481 U.S. 739, 750 (1987) (pretrial detention based on dangerousness requires particularized findings; it is "the carefully limited exception" to the norm of liberty). Examined carefully, the record here does not establish the kind of danger that justifies detention — and even

9

if some residual concern exists, the statute demands release under conditions tailored to address it, not incarceration.

Mr. Cherkaoui has no criminal record of any kind. He has no history of violence, no history of threatening behavior, and no prior failures to comply with court orders or conditions of release. The government cannot point to a single instance in which Mr. Cherkaoui has physically harmed or threatened to physically harm any person. The absence of such a record is the most reliable predictor of future conduct available to this Court. *See United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985) (past conduct and criminal history among the most probative § 3142(g) factors).

The charges in this case arise from online communications and electronic activity, not from acts of physical violence. This distinction is legally significant. Danger arising solely from electronic conduct can be directly and completely neutralized by technology-based conditions of release — something that distinguishes these allegations from cases involving weapons, drugs, or in-person violence, where conditions are frequently found inadequate.

Federal courts and the U.S. Probation and Pretrial Services system have developed a robust framework of cybercrime-specific release conditions precisely because electronic conduct, unlike physical danger, is amenable to monitoring and control. The United States Courts' own guidelines for cybercrime supervision describe conditions including monitored computer access with installed monitoring software, prohibition on internet access, device restrictions, and Pretrial Services management of all approved devices. *See* U.S. Courts, Probation and Supervised Release Conditions: Chapter 3 — Cybercrime-Related Conditions (U.S. Courts).[1] These are are routinely

---

[1] https://www.uscourts.gov/about-federal-courts/probation-and-pretrial-services/post-conviction-

imposed and enforced in federal cases involving alleged online misconduct.

The Bail Reform Act does not permit detention whenever any theoretical danger exists. It requires detention only when *no condition or combination of conditions* will "reasonably assure" the safety of the community. 18 U.S.C. § 3142(e)(1). This is an exacting standard, and it is the government's burden to satisfy it. *United States v. Himler*, 797 F.2d 156, 160–61 (3d Cir. 1986); *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985) (en banc). The government cannot meet that burden here.

Mr. Cherkaoui is prepared to submit to any combination of the following conditions:

- Complete prohibition on internet access and use of internet-connected devices

- Surrender of all electronic devices subject to Pretrial Services inventory and monitoring

- Home detention with GPS electronic monitoring

- No-contact orders with any alleged victims

- Third-party custodial supervision by family members

- Regular check-ins with Pretrial Services

Each of these conditions directly addresses the government's stated concern — that Mr. Cherkaoui might engage in continued online conduct. The alleged harm here is entirely dependent on internet access. Remove that access, and the alleged risk is removed with it. This is precisely the scenario in which conditions of release can "reasonably assure" community safety within the meaning of § 3142(e). Courts have recognized that, in cases where alleged danger flows from access to a specific instrumentality — whether a computer, the internet, or a particular means of

---

supervision/overview-probation-and-supervised-release-conditions/chapter-3-cybercrime-related-conditions-probation-and-supervised

communication — targeted restrictions on that instrumentality can adequately protect the community and support pretrial release. *Cf. United States v. Gilbert*, 511 F. Supp. 3d 669 (E.D. Pa. 2021) (finding that home confinement with GPS monitoring, prohibited internet access, and prohibited contact with specific individuals overcame presumption of detention where defendant had no prior criminal history or history of violence).

The government may argue that monitoring can be circumvented. That argument proves too much. If theoretical circumvention were sufficient to mandate detention, no defendant charged with technology-related offenses could ever be released — a result the Bail Reform Act plainly does not contemplate. *United States v. Orta*, 760 F.2d at 891 (statute requires only "reasonable assurance," not a guarantee). The Court is not required to eliminate all risk; it is required to determine whether conditions can reasonably manage it. Here, they plainly can. Accordingly, the fourth factor weighs in favor of release on tailored conditions.

These proposed conditions are certainly more than adequate to assure Mr. Cherkaoui appearance in this case. This Court need not look much beyond the Third Circuit's unpublished decision in *United States v. Cirillo*, 1999 WL 1456536 (3d Cir. 1999) where the Court of Appeals reversed a district court's denial of detention on facts remarkably similar to those at issue in this case. In *Cirillo*, defendant was charged with an offense invoking a presumption in favor of detention (conspiracy to possess with intent to distribute methamphetamine).[2]  In addition, the defendant was a citizen of, and resided in, another country.  Mr. Cirillo, however, offered to post significant bond and waive certain rights, including an "Irrevocable Waiver of Extradition."  In

---

[2] Interestingly, *Cirillo* was a case involving the rebuttal presumption in favor of detention.

reversing the district court's revocation of a Magistrate Judge's earlier release order, the Court of Appeals emphasized that conditions existed for his release  "particularly given his friend's willingness to secure his release [through the posting of real estate]." *Id* at 2.

Moreover, Mr. Cherkaoui is willing to agree to bail under any conditions as the Court deem necessary. He understands that if he were to be re-arrested, he would not only face the potential penalty of the new offense, but also a penalty for bail-jumping which would require a lengthy, consecutive jail sentence.  But most importantly, he realizes that if he is released on bail, any monies and/or properties posted by his family and friends to secure this release would be forfeited and lost forever.  In this instance, the property to be posted is actually his family's home located at 144 Blackman Road, Egg Harbor Twp, NJ 08234.

<b><u>CONCLUSION</u></b>

The above conditions will more than adequately assure Mr. Cherkaoui's appearance in court through the conclusion of this case, and ensure the safety of those in the community.  For all of these reasons, it is respectfully requested bail be set in this matter, and Mr. Cherkaoui be released on the conditions outlined above.

Respectfully Submitted,

DATED: March 11, 2026

*/s/ Terrell A. Ratliff*
TERRELL A. RATLIFF, ESQUIRE

13