

U.S. Department of Justice

*United States Attorney*
*District of New Jersey*

March 24, 2026

**Via CM/ECF**

The Honorable Elizabeth A. Pascal
United States Magistrate Judge
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey 08101

> Re: *United States v. Marek Cherkaoui*, Mag. No. 25-7064

Dear Judge Pascal:

This defendant is as dangerous as it gets.  His current weapons are his computer and the internet.  But, if not for the perseverance of the law enforcement officers in this case, the defendant may have progressed to using weapons exponentially more powerful.  The defendant's motion for release on bail (ECF No. 14, the "Motion") should be denied.

The defendant is a disturbed individual who harassed and threatened multiple victims over the internet, convincing them to harm themselves and, in one tragic example, may have convinced someone to kill themselves.

While terrorizing vulnerable victims online, the defendant also planned terroristic attacks and began taking steps to effectuate those attacks.  For example, he began collecting materials, such as tactical clothing, a bulletproof vest, and a military-style knife – items that he intended to use to harm and kill innocent people.

This is not a close call.  The defendant is a danger to the community, and the Court correctly concluded so at the defendant's initial bail hearing.  Nothing has changed since then, and there are no conditions of release that can assure us that the defendant will not continue his terroristic behavior or progress to acts of unthinkable horror.  He must be detained.

## I.      Factual Background and Procedural History

As set forth in the criminal complaint, the defendant adheres to the Nihilistic Violent Extremist ("NVE") collective dubbed "764."  *See* Complaint ¶¶ 1-7.  As part of that ideology, the defendant threatened individuals online, solicited child sex abuse material, and discussed and planned terroristic attacks.  *See id.* ¶¶ 7-25.  For reasons set forth in more detail below, these facts all weigh heavily in favor of detention.  *See infra* Section III.C.

The complaint charges the defendant with cyberstalking Victim 1 between December 2024 through May 2025.  Complaint ¶ 26.  Victim 1 is an autistic female who was 13 years old when she was relentlessly harassed by the defendant.  *Id.*

In or around December 2024, the defendant began communicating with Victim 1 online via YouTube and Discord.  *Id.* ¶ 27.  The defendant and his co-conspirator CC-1 told Victim 1 that she needed to cut herself or they would "dox" her, *i.e.*, put her personal information online.  Victim 1 took the threat seriously, was scared of the defendant, and believed that he would dox her.  In fear of that threat, Victim 1 used a knife to make multiple cuts on her left arm.  *Id.* ¶ 29.

But that wasn't enough for the defendant.  He continued harassing vulnerable Victim 1, telling her that it was "Time to start cutting yourself again . . . Fat fat fatty fat retard fatty.  You need to slit your wrists."  *Id.* ¶ 33.

In May 2025, the defendant and CC-1 again threatened to dox Victim 1 unless she cut herself again.  *Id.* ¶ 38.  And again, sadly, Victim 1 felt truly threatened.  *Id.*  In response to the threats, Victim 1 again cut herself and filmed herself making multiple cuts on her right arm.  *Id.* ¶ 40.  The defendant, still not satisfied with his hedonistic acts, posted Victim 1's information online anyway.  *Id.* ¶ 41.

On November 14, 2025, the defendant was arrested on a criminal complaint charging him with cyberstalking Victim 1, in violation of 18 U.S.C. § 2261A(2)(b).  At the time of the defendant's arrest, law enforcement officers conducted a search of the defendant's residence.  The officers found, *inter alia*, a military-style knife and journal entries planning terroristic attacks, described further below.

At the defendant's initial appearance, the Government requested detention based on danger to the community and risk of non-appearance.  The defendant sought bail and suggested conditions virtually identical to those now requested in the Motion.  The Court denied the defendant's motion.

## II.    Legal Standard

Detention pending trial is governed by 18 U.S.C. § 3142. When deciding whether to release or detain a defendant, the Court determines whether "any conditions or combination of conditions set forth in [18 U.S.C. § 3142(c)] will reasonably assure the appearance of such person as required and the safety of any

other person and the community . . . ." 18 U.S.C. § 3142(f).[1] After a bail hearing, if the court concludes "that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial . . . ." 18 U.S.C. § 3143(e).

In cases involving crimes against minors and dangerous weapons, as here, the Government may seek detention to ensure the safety of the community. *See* 18 U.S.C. § 3142(f)(1). In this case, the burden is on the Government to prove by clear and convincing evidence that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e)(1), (f).

To determine if the Government has met this burden, the Court will consider factors including:

1. the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

2. the weight of the evidence against the person;

3. the history and characteristics of the person, including—

    a. the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    b. whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

4. the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

---

[1] Title 18, United States Code, Section 3142(c) lists a non-exhaustive set of factors that the Court may consider imposing upon the defendant to ensure that the defendant complies with the conditions of the proposed bail. The list includes, as the defense has proposed, refrain from the use of drugs (and be subject to testing), consent to location monitoring, and remain in the custody of a third-party custodian. *See* 18 U.S.C. § 3142(c)(1)(B).

## III.    Argument

The Court correctly applied the four factors under 3142 when it previously determined that the defendant is a danger to the community and a risk of flight. The Court should so conclude again.

### A. The Nature of the Offense

The nature of the offense in this case weighs overwhelmingly in favor of detention. To start, the offense is a crime involving dangerous weapons and a minor victim, two factors that Congress explicitly identified as crimes warranting detention. *See* 18 U.S.C. § 3142(f)(1)(E).

And the offense here is horrific, pervasive, and sadistic. Solely for his own pleasure and to advance his twisted worldview, the defendant targeted, harassed, and threatened Victim 1, a vulnerable minor female. Victim 1 succumbed to fear and the threats and cut herself. Yet that wasn't enough. The defendant continued to harass, threaten, and instill fear into Victim 1 until she once again committed an act of self-harm.

The offense here calls for detention. The defendant can commit this crime anywhere, anytime, with any device. And it appears he cannot or will not stop himself. The defendant's home was searched and his cell phone was seized in June 2025. Those searches, which would be life-altering to most, didn't slow him down. He got another device and continued his deviant conduct. *See* Complaint ¶ 25 (detailing the defendant's horrific online conduct *after* his house was searched and his devices were seized). The defendant's post-search conduct shows that intervention by law enforcement or the Court will not change his behavior.

The Motion asserts that strict conditions of release, including a ban on access to devices, will ensure the safety of our children. The Court rightly rejected this argument at the detention hearing in November 2025 and should do so again. No matter the conditions imposed, all the defendant needs is access to an internet-capable device, which are ubiquitous in our times. Such a device could come from a sympathetic parent, an unwitting sibling, or a devious co-conspirator. And then, just like that, the defendant will be threatening, harassing, and harming vulnerable victims online. The Court correctly concluded before that it is not worth the risk. Only detention can protect the community and its children from the defendant.

### B. The Weight of the Evidence

The weight of the evidence is overwhelming. Evidence obtained from the defendant's seized devices confirm what records from internet providers also showed – that he is the coward posting under the usernames attributed to him by law enforcement. This is not somehow a case of mistaken identity.

4

Nor, contrary to the defendant's suggestion, is this somehow a case where the Government and victims misunderstood the defendant's repeated online postings. The evidence in this case makes it clear that the defendant follows the twisted ideology of 764, which advocates for the harassment and harming of children. And the defendant's own conduct conclusively reveals his true colors and intent. For example, *after* Victim 1 cut herself, the defendant told her to do it *again*. This is not a case where the defendant took a joke too far, on a single occasion, and was misunderstood. Rather, this is a case where the defendant's words caused tragic consequences, he learned about it, and he chose to *do it again*. Each time, his words, his intentions, and his goals were clear.

The defendant argues that the lack of discovery in this case somehow weighs in favor of pretrial release. And he specifically and repeatedly raises questions regarding "forensic" discovery, suggesting that some unknown forensic data would somehow exonerate him. The defendant's arguments fail for numerous reasons.

First, the defendant *has* received discovery, including multiple reports of data found on his devices and accounts. The discovery also includes a heartbreaking video of an interview of Victim 1 where she explained the pain and terror caused by the defendant. The evidence produced in discovery, like the allegations in the complaint, is overwhelming.

Second, the defendant has *not* requested any additional discovery from the Government. The Government is not hiding anything and is willing to consider all reasonable discovery requests at this stage. The defendant cannot twist his own choice not to ask for additional discovery into a sword justifying pretrial release.

Third, the defendant already knows *exactly* what is on *his own devices and social media accounts*. If there was any beneficial evidence on those devices or accounts, "forensic" or otherwise, he could simply tell us. His failure to do so is telling (and unsurprising, given what the evidence shows).

At bottom, the evidence in this is overwhelming and weighs heavily in favor of detention. The defendant's arguments to the contrary are specious and unpersuasive.

### C. The History and Characteristics of the Defendant

The defendant's history and characteristics paint the portrait of a twisted, hateful man on the verge of committing horrific crimes of violence and terrorism.

The defendant adheres to the ideology of the NVE group 764. As discussed in the Complaint, 764 is an NVE that engages in criminal conduct in the United States and abroad. Complaint ¶ 6. The 764 network's goals include social unrest and the downfall of the current world order. *Id.* Members of 764 work alone and in concert with one another towards a common purpose of destroying civilized society

through the corruption and exploitation of vulnerable populations, including minors. *Id.*

Here, there is no doubt that the defendant subscribes to 764 ideology.[2]  The defendant's own online posts make that clear:

- "764 is my favorite honestly because the[y] go after . . . minority kids . . . which is awesome… Better for them to be removed when they're young before they grow up and become a bigger problem . . . . They marginalized [i.e., minority] kids are a very good high-value soft target for 764 and the other groups should take note." *Id.* ¶ 25(b).

- "764 is good.  The grooming victims deserve it." *Id.* ¶ 25(g).

- "Society must collapse to STOP WHITE GENOCIDE!!! I support all groups mainly 764 and TCC [true crime creators] unleash them let them pray on all marginalized minority children." *Id.* ¶ 25(i).

- "This needs to be counteracted by 764 and TCC influenced individuals removing the foreign children as a form of population control and increasing the White share of the population by removal of other competing ethnic groups." *Id.*

- "764 are not pdf files [pedophiles] they are 'cyberbully' group and the kids deserve it." *Id.* ¶ 25(o).

The defendant's adherence to this twisted ideology has driven him to threaten and harass individuals other than Victim 1.[3]  These threats and harassing statements include:

- Telling an individual that "WE FOUND YOUR CHURCH.  WE WILL FIND (YOU) NEXT."  Complaint ¶ 8(a)

- Telling Individual 1 that he/she was groomed and sexually harassed and that "YOU DESERVED IT HAHA" and that "IT WILL

---

[2] In the Motion, the defendant argues that the Government has failed to show that the defendant is a member of an organized "gang." *E.g.*, Motion at 6.  This is a strawman.  As described in the Complaint, NVEs work individually or as part of loose, flexible online networks. *See* Complaint ¶¶ 1-6.  There is no such thing as a card-carrying member of 764.

[3] The Government is investigating the identities of these and other individuals who were threatened by the defendant and is preparing to bring additional charge(s) against the defendant based on these additional victims.

6

HAPPENED AGAIN AND AGAIN UNTIL YOU FINALLY COMMIT [suicide]." *Id.* ¶ 8(b)(i).

- Telling Individual 1 that he/she needs to "Cut deeper" and then celebrating when learning that Individual 1 may have committed suicide. *Id.* ¶ 8(b)(ii)-(iii).

- Doxing Individual 2 and a relative of Individual 3. *Id.* ¶ 9.

- Threatening to dox Individual 4, telling Individual 4 that he/she needs to cut the defendant's username on his/her leg, and threatening to SWAT Individual 4. *Id.* ¶ 10.

- Threatening Individual 5 and telling him/her that "Nothing is stopping me from ambushing you, slicing up your greasy meatsuit, and laying your head on the floor." *Id.* ¶ 12.

In addition, when the defendant's home was searched in November 2025, law enforcement officers found a written diatribe containing numerous, multiple threats towards a specific individual. The defendant wrote that the individual had sexually assaulted the defendant in the fifth grade. He further wrote that he needed to "Kill him now"; "Give him Benadryl"; "Kill him and dump his body in the woods." He went on, writing, "I will kill him for assaulting me in this way and I will kill this rapist faggot homosexual." He continued, writing that he intended to kill "the rapist faggot subhuman," "behead him," "cut his fucking head off chop off his head he raped you." *See* Ex. A.[4]

Defendant's history goes beyond making piecemeal threats to one or two individuals. The evidence shows that the defendant has planned and taken steps to commit heinous acts of terrorism.

- The defendant has glorified and expressed admiration for school shooters. Complaint ¶¶ 17-18.

- The defendant posted online about making and using an explosive chemical that was used in terror attacks in England and Afghanistan. *Id.* ¶ 19.

---

[4] Defendant argues in the Motion that he has "no history of threatening behavior" and that the "government cannot point to a single instance in which Mr. Cherkaoui has physically harmed or threatened to physically harm any person." Motion at 10. This assertion is hard to square with reality. *See, e.g.*, Ex. A; Complaint ¶¶ 8(a), 8(b), 9, 10, 11, 12, 25(f), 26-41.

- The defendant posted links to materials that provide instructions on how to commit a terroristic attack. *Id.* ¶ 20.

- The defendant prepared a "plan" that appears to be a manifesto describing the steps he intended to take to commit his acts of terror, including joining ISIS, learning how to make a truck bomb, and returning to America to execute his attack. *See* Ex. B.

- In another manifesto, the defendant described various other ways he could commit a mass casualty event, including with a sniper rifle, a homemade bomb, or with drones. *See* Ex. C.

- The defendant prepared a list of "Things to buy" that included an AK-47, high-capacity magazines, other guns, pipe bombs, a bomb bag, items for making explosives, and other items that would be needed for a terroristic attack. *See* Ex. D.

Notably, the defendant has done more than "just" plan out his violent assaults and attacks. He began to amass the requisite tools of terror, including body armor, zip ties, tactical clothing, and a military-style knife. *See* Complaint ¶¶ 21-22. Notably, the defendant obtained the military-style knife *after* his house was searched in June 2025. Rather than deter the defendant, as one might hope it would, the house search apparently emboldened the defendant in his dogged quest for mass violence and evil.

Additional materials found on the defendant's devices speak strongly about his character and the danger he poses to the community. Evidence found on his devices include videos depicting:

- Bomb-making
- Kittens being crushed and killed
- ISIS beheadings
- Toddlers and infants being physically abused.

Finally, the defendant's history demonstrates that he also poses a risk of non-appearance. He has no stable job, minimal income, and significant ties and travel abroad, including a weeks-long trip to Eastern Europe to visit relatives last summer.

### D. The Nature and Seriousness of the Danger

The nature and seriousness of the danger posed by the defendant is the fourth factor under 3142 and weighs strongly in favor of detention. The dangers here are multifaceted and significant. The defendant poses a threat to individuals online by terrorizing them and convincing them to harm themselves. And the

defendant has planned and appears to be dedicated to carrying out a mass casualty terrorism attack.  These dangers are simply too great to be risked.

The proposed conditions of release are insufficient to alleviate the plain risks of danger posed by the defendant.  His conduct can be done anywhere, anytime, with any electronic device.  And much of the conduct described above took place *at his home, under the supervision of his parents*—which is exactly where he now wants to be released.  In addition, as noted above, the search of his home by the FBI in June 2025 did absolutely nothing to deter his conduct.  He easily obtained more devices that allowed him to maintain his dedicated path of terror.  He continued to post horrible things online, continued to view and save disturbing videos of gore and masochism, and continued his plans to kill others, including by obtaining the military-style knife.

For all these reasons, the Government requests that the Court deny the Defendant's request for bail.

Respectfully submitted,

ROBERT FRAZER
UNITED STATES ATTORNEY

/s/ Joseph McFarlane

JOSEPH MCFARLANE
Assistant United States Attorney

cc: Terrell Ratliff, Esq. *(via CM/ECF)*
   Adrienne Smith, Pretrial Services Officer *(via email)*